# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**ROBIN JEAN LYON CINI**,

Debtor.

Case No.  **10-62715-11**

# MEMORANDUM OF DECISION

At Butte in said District this 22nd day of June, 2012.

Pending in the above-captioned case is the motion to modify stay filed by Joseph A. Lesmeister ("Lesmeister") on January 24, 2012 (Docket No. 217) which seeks relief from the stay to pursue a personal injury action against the Debtor in state district court, only to the extent of the Debtor's insurance coverage.  Debtor filed an objection and "Counterclaim" seeking damages for violation of the automatic stay by Lesmeister.  (Dkt. 231).  Lesmeister filed a motion to strike the Counterclaim (Dkt. 268).  A hearing on these matters was held at Missoula on May 10, 2012.  The parties were represented by counsel.  Testimony of witnesses and exhibits were admitted into evidence.  At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, which have been filed and reviewed by the Court together with the record and applicable law.  These matters are ready for decision.  For the reasons set forth below Debtor's objections are overruled, Lesmeister's motion to strike Debtor's Counterclaim will be granted, and Lesmeister's motion to modify stay will be granted.

This Court has exclusive jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a).  Lesmeister's motions are core proceeding under 28 U.S.C. § 157(b)(2).  This Memorandum of

1

Decision sets forth the Court's findings of fact and conclusions of law.

Lesmeister was represented at the hearing on May 10, 2012, by attorney Jon R. Binney ("Binney") of Binney Law Firm, P.C., Missoula. The Debtor Robin Jean Lyon Cini ("Robin" or "Debtor") appeared and testified, represented by attorney James H. Cossitt ("Cossitt") of James H. Cossitt, PC, Kalispell. Also testifying were attorneys David J. Tennant ("Tennant"), Scott Hamilton ("Hamilton"), and Robin's insurance defense counsel Tammy Wyatt-Shaw ("Wyatt-Shaw"). Exhibits ("Ex.") 2, 3, 4, 5 offered by Lesmeister, and Debtor's Ex. RC1, RC2, RC3, RC4, and RC5, all were admitted by stipulation. In addition Debtor requested the Court take judicial notice of the motion and objection.

## FACTS & PROCEDURAL HISTORY

Lesmeister is the plaintiff in a personal injury action in Case No. DV-09-1431A in the Montana Eleventh Judicial District Court, Flathead County, resulting from an automobile accident in which Robin was involved. Tennant is Lesmeister's attorney in DV-09-1431A. Tennant does not practice bankruptcy law. He testified that he filed the complaint in DV-09-1431A after the accident in April 2009. Originally, Lesmeister did not include Robin as a defendant in DV-09-1431A because he did not think she was negligent. That changed after he received an expert's report which stated that Robin was allegedly negligent.

Robin filed a voluntary Chapter 13 petition Schedules and Statement of Financial Affairs on November 19, 2010. On Schedule F the Debtor listed Lesmeister as a creditor with an unsecured nonpriority claim in an unknown amount arising from the accident on 4/16/2009, and marked the claim as contingent, unliquidated and disputed.

The Notice of the Debtor's Chapter 13 bankruptcy case, meeting of creditors and

2

deadlines (Dkt. 3) was mailed to creditors.  Ex. RC2.  The Notice specified a deadline for filing a

proof of claim was April 13, 2011.  Ex. 2.  The Notice of the claims bar date, including a proof of

claim form was mailed to Tennant and Lesmeister on November 21, 2010.  Dkt. 15.  Tennant

testified that he received the Notice.  No proof of claim was filed by or on behalf of Lesmeister

by the claims bar date.

Tennant testified that Lesmeister hired Hamilton on March 27, 2011, to give an opinion

on how to proceed given Robin's bankruptcy, and about the effect of bankruptcy rules and the

automatic stay on Lesmeister's personal injury claim against the Debtor.  Hamilton testified that

he researched the automatic stay, and consulted with the Chapter 13 Standing Trustee in reaching

his conclusion.  He admitted that he gave his opinion without knowing whether the accident

occurred before or after the date of the filing of Debtor's Chapter 13 petition.

Hamilton testified that he concluded that the circumstances called for a pro forma

granting of the automatic stay.  Hamilton testified that he concluded that relief from the stay need

not be sought because the insurance proceeds from Robin's liability insurance policy were not

property of the estate.

Hamilton testified that his paralegal Nancy Wilson ("Nancy"), and not Hamilton, spoke

with Cossitt prior to July 2011, about the need to obtain relief from the stay before initiating

litigation against the Debtor.  Ex. RC5 is a series of emails between Nancy and Cossitt, the

Trustee, and Tennant, beginning May 16, 2011, when Nancy sent Cossitt the proposed amended

complaint in the state court case adding Robin as a defendant.  Ex. RC5, p. 7.  Cossitt responded

on May 30, 2011, stating that it was "an otherwise unremarkable request for stay relief except for

the fact that your client blew the deadline for a POC and is no longer a party in interest."  Ex.

3

RC5.  Cossitt requested that Hamilton explain what subsection of § 362(d) Lesmeister seeks

relief from the stay, and answer his questions how Lesmeister has standing to seek relief.  Ex.

RC5.  Hamilton testified that he did not recall seeing Cossitt's May 30, 2011, email with those

questions.  Cossitt followed up on June 7, 2011, repeating that Lesmeister lacked standing to

seek stay relief because he was not a creditor since he did not file a timely proof of claim, citing

*In re Comcoach*, 698 F.2d 571, 573 (2nd Cir. 1983).  Ex. RC5.  Tennant testified that he did not

know what Cossitt's standing issue meant.

Hamilton sent Tennant a letter dated July 8, 2011, regarding the need to file a proof of

claim and to file a motion to modify the stay.  Ex. 5 is Hamilton's letter.  Tennant did not look at

Ex. 5 until July 12, 2011.  In Ex. 5 Hamilton relates the conversation he had with the Chapter 13

Trustee about whether Lesmeister needed to file a proof of claim in Robin's case, or whether he

needed to request relief from the stay.  Hamilton concluded, with respect to a proof of claim, that

there was no reason to file one because any insurance proceeds sought by Lesmeister would not

be property of the estate, and asserted that the "Trustee agreed with me."  With respect to stay

relief, Hamilton stated neither he nor the Trustee could understand Cossitt's argument that the

stay could not be lifted because Lesmeister lacked standing since he had not filed a proof of

claim.  Hamilton wrote:

> In fact, we[1] agreed that Stay relief was more of a formality.  Which leads me to
> these thoughts:
>
> Since Lesmeister is not making a claim against property of the Estate, nor Cini
> personally, no Stay relief is necessary.  It is more of a formality.  Therefore, I am
> making this suggestion.  File the complaint against Cini; however, in the prayer
> make it crystal clear that Lesmeister will not hold Cini personally liable for a [sic]

---

[1]Meaning the Trustee.

4

damages, will not allow any lien to attach itself to any real or personal property of Cini, will only seek damages from the proceeds of any insurance, and will not make any claim against the Estate of Cini in bankruptcy.

Ex. 5

Hamilton testified that he did not believe that Robin's insurance policy was property of the estate, and that whether a policy is property of the estate depends on the type of policy. He testified that by "formality" in Ex. 5 he meant that stay relief motions are normally granted in 99 percent of cases, and later explained that parties often stipulate that a party will seek relief from the stay only as to insurance proceeds.

Tennant stated that he relied on Hamilton's letter and conversation with Hamilton in concluding that no stay relief was required to be sought from this Court. On behalf of Lesmeister, and without first seeking relief from the automatic stay in this case, Tennant drafted and filed on July 21, 2011, a First Amended Complaint in DV-09-1431A, Ex. 2, naming Robin as a defendant under a claim of negligence and negligence *pro se*. Ex. 2. Tenant testified that he made the decision to file the First Amended Complaint. The demand for judgment on page 3 of Ex. 2 states:

> For relief against Robin Cini only as allowed by bankruptcy law (Bankruptcy counsel for Plaintiff discussed the issue with defendant Cini's bankruptcy trustee and as long as damages are only sought from Cini's insurer and there is no claim against the bankruptcy estate, relief from the bankruptcy stay is not necessary[2]);
> ....

Hamilton disagreed on cross examination by Cossitt that paragraph 3 of the amended complaint is devoid of any language regarding Linda's personal liability, and he testified that the

_____

[2]For reasons discussed below, Hamilton's opinion that relief from the stay was not required prior to filing the First Amended Complaint was incorrect as a matter of law, and so was the statement in the demand for judgment.

5

phrase in paragraph 3, "are only sought" from the insurer, would protect the estate's property from attachment of a judicial lien. Tennant agreed, but he did not know what guidance the conditions in the prayer gave to the state court judge or attorneys in DV-09-1431A.

Hamilton testified that he believed a judgment could be structured so that no liens would appear on Robin's credit report, but he admitted that the prayer does not prevent a credit reporting agency from listing any judgment entered against Linda on her credit report.

Tennant testified that he did not know that credit reporting agencies picked up lawsuits. Tennant testified that he knew Robin was represented by counsel, and that he knew that Cossitt believed he should not proceed in state court against Robin without obtaining relief from the stay from the bankruptcy court.

Tennant had Robin personally served[3] with the amended complaint on September 2, 2011, at her home. She testified that she fainted, and when she awoke she was in shock and upset. She contacted Cossitt and her personal injury attorney.

Wyatt-Shaw is Robin's defense counsel in DV-09-1431A. Ex. RC3. She testified that she was contacted on September 7, 2011, and was retained by Robin's motor vehicle liability insurance policy carrier Safeco, that she traveled to Whitefish to investigate the case and met with Robin about DV-09-1431A and a second lawsuit. Wyatt-Shaw testified that Safeco contacted her under Robin's motor vehicle liability policy, and Safeco authorized her to proceed to represent Robin in DV-09-1431A. She explained that she assumes Lesmeister will seek relief from the stay to proceed with DV-09-1431A against Robin, and she must participate and be

---

[3]Tennant knew that Robin was represented by counsel, but he had her personally served because, he testified, that is the procedure he uses.

ready[4].

Cossitt emailed the Chapter 13 Trustee on September 7, 2011, asking whether the statement in the prayer of the complaint statement, i.e., that the Trustee advised that stay relief was not necessary, was accurate. Ex. RC5, p. 5. The Trustee responded by email on September 8, 2011, stating that he could not recall anything specific about his talk with Hamilton, but that "I doubt I would have said anything other than that the court routinely grants stay relief to go after the insurance" and that he might have said that he could consent to stay relief. Ex. RC5. Tennant testified that the Trustee emailed him stating that the Trustee did not say he consented to relief from the stay.

Cossitt forwarded the Trustee's email to Hamilton and Tennant on September 8, 2011, with a demand that they dismiss Robin from DV-09-1431A, or he would file a motion to enforce the stay and seek monetary damages against Lesmeister and Tennant's law firm. Ex. RC5, p. 3. Tennant replied on September 13, 2011, asking whether he could avoid dismissal. Ex. RC5, p. 3. Cossitt repeated the request that Robin be dismissed without prejudice, but stated that he would not raise the dismissal in any fashion if Lesmeister obtained stay relief. Ex. RC5, p. 2. Cossitt repeated his earlier emails suggesting that Lesmeister lacked standing to request stay relief. Ex. RC5, pp. 1-2. Under cross examination, Hamilton testified that he did not respond to Cossitt's question regarding standing.

Tennant agreed to file the motion to dismiss and filed it in DV-09-1431A on September

---

[4]Wyatt-Shaw testified that she has incurred approximately $25,000 in fees and costs in representing Robin in the state court cases, but that Robin is not obligated to her insurance company for these fees and costs. Safeco paid Wyatt-Shaw's firm $10,497.86 in fees and costs through January 15, 2012, and she has incurred $13,333.86 in additional fees and costs since January 15.

15, 2011. Ex. 3.  Wyatt-Shaw sent Tennant a letter dated September 22, 2011, Ex. RC-3, advising him that she had been retained to represent Robin, noting that he had filed the motion to dismiss and they had discussed his need to obtain relief from the stay to proceed against her. Robin was dismissed from DV-09-1431A without prejudice by order dated October 18, 2011. Ex. 4.  Tennant called Wyatt-Shaw and advised her of Robin's dismissal.  Robin agreed that Tennant dismissed her from DV-09-1431A within 10 days[5].

On December 14, 2011, in Adversary Proceeding No. 11-00056 this Court entered a Memorandum of Decision granting creditor Genesis Enterprises, Inc.'s ("Genesis") motion to dismiss the Debtor's Chapter 13 case for lack of eligibility under the debt limitation of 11 U.S.C. § 109(e).  The Court granted the Debtor's request for time to file a motion to convert the case to another chapter or the case would be dismissed.  Debtor filed her motion to convert the case from chapter 13 to chapter 11 on December 28, 2011.  After a hearing on that motion, after Debtor's former spouse and creditor Nigel Cini filed an objection and the Chapter 13 Trustee filed a consent, the Court overruled the objection and converted this case to a case under chapter 11 by Order entered on February 9, 2012.  Dkt. 235.  The Court overruled Nigel's objection both "since his claim has been disallowed he lacks standing to object" and because Nigel received due process in his divorce case in state court.

Tennant testified that he did not require any discovery from Robin in DV-09-1431A after she was dismissed, but that Wyatt-Shaw participated in discovery proceedings after her dismissal.  Wyatt-Shaw testified that there was confusion after Robin was dismissed from DV-

[5]The evidence shows that Robin was served on September 2, 2011.  The order dismissing her from DV-09-1431A was entered on October 18, 2011.  Ex. 4.

8

09-1431A because Lesmeister had not obtained relief from the stay.  On January 9, 2012, Wyatt-Shaw sent a letter to counsel declining to stipulate about consolidating discovery in the state court cases, because Robin was still protected by the stay and she refused to stipulate that discovery against her could proceed[6].  Ex. RC4.  Under cross examination, Wyatt-Shaw testified that her law firm's fees and costs incurred representing Robin are to be paid by Safeco, and not by Robin.

After the Court's decision in Adv. No. 11-56 granting Genesis' motion to dismiss for Debtor's lack of eligibility was entered, and while the Debtor's motion to convert was pending, Lesmeister filed his motion to modify stay on January 24, 2012 (Dkt. 217).  That motion seeks relief from the stay under § 362(d) to name Robin as Defendant in the personal injury case DV-09-1431A, "but only to the extent of the insurance coverage and agrees that execution of any judgment shall be limited to the insurance coverage."  The Chapter 13 Trustee filed a consent on January 26, 2012.

Debtor filed her objection (Dkt. 231) to Lesmeister's motion on February 8, 2012.  The objection includes Debtor's defenses that Lesmeister lacks standing and is not a party in interest because he never filed a Proof of Claim by the deadline set by the Notice of Chapter 13 Case (Ex. RC2), and asserts a "Counterclaim I (Violation of the Automatic Stay)" against Tennant's firm Kaufman, Vidal and Hileman, PC, for Tennat's knowing and willful violation of the stay by filing the First Amended Complaint against the Debtor in DV-09-1431A.

Lesmeister filed his motion to strike Debtor's counterclaim on March 15, 2012, Dkt. 268.  The motion to strike contends that the counterclaim should be filed and decided separately from a

_____

[6]She testified that the deposition of Robin has been postponed time and time again.

9

motion for relief from the stay, which is handled in a summary fashion.  Debtor filed an objection

to the motion to strike, Dkt. 274, arguing that the counterclaim is based on the same statute, §

362, as Lesmeister's motion to modify stay and should be allowed.  Debtor's objection states:  "If

the Court grants the Motion to Strike, the stay violation can and will be filed as a separate motion

for relief or the Court could just order it be docketed in that manner."  Debtor argues that

consolidation would be appropriate for the efficient use of judicial resources.

 A Notice of commencement of the case in chapter 11, Dkt. 237, was docketed on

February 15, 2012, and mailed to creditors, including Lesmeister and Tennant, on February 17,

2011.  The Notice states on the front page:

> Deadline to File a Proof of Claim:
> Notice of deadline will be sent at a later time.

On the back of the Notice is a section explaining "Claims" which provides in pertinent

part:

> If your claim is scheduled and is *not* listed as disputed, contingent, or
> unliquidated, it will be allowed in the amount scheduled unless you file a Proof of
> Claim or you are sent further notice about the claim.  Whether or not your claim is
> scheduled, you are permitted to file a Proof of Claim.  If your claim is not listed at
> all *or* if your claim is listed as disputed, contingent, or unliquidated, then you
> must file a Proof of Claim or you might not be paid any money on your claim and
> may be unable to vote on a plan.  The court has not yet set a deadline to file a
> Proof of Claim.  If a deadline is set, you will be sent another notice.

The Debtor filed amended Schedules A, B, and C after conversion to chapter 11, but she

did not amend her Schedule F, so Lesmeister's claim is still scheduled as contingent, disputed

and unliquidated.  The Debtor has not filed a request to set a claims bar date, and no notice of

deadline to file a Proof of Claim has been sent out to creditors.  When asked by the Court at the

hearing about a new bar date, Cossitt stated there is no bar date yet and he did not know if there

10

would be a bar date requested.  Consequently, no deadline for filing a Proof of Claim has been set in this chapter 11 case.  Binney stated that Lesmeister would file a Proof of Claim, but none has been filed to date.

Robin testified that her attorney Cossitt has incurred a total of $4,525 in fees and costs related to these stay proceedings, and another 6.5 hours in court at the hearing on May 10, 2012. She did not know how much travel time Cossitt incurred attending the hearing.  Robin traveled 126 miles each way to attend the May 10, 2012, hearing.  She admitted on cross examination that she and Cossitt had another matter on the hearing calendar for May 10, 2012, but testified that she would have appeared by video if the motion to modify stay had not been on the calendar.

Robin incurred video expense for an earlier hearing on these contested matters. The Court directed Cossitt to file an affidavit of video expense incurred in relation to this contested matter.  Cossitt filed the affidavit on May 24, 2012 (Dkt. 325) stating that his office paid $187.50 to Eyehear Technology Group for video conference services provided on April 12, 2012.[7]

Robin testified that the accident lawsuits distract from her ability to reorganize under chapter 11, and she does not want to spend resources in DV-09-1431A.  If stay relief is granted, Robin requested that conditions include a determination that she has no personal liability, that no lien arise against her property from any judgment, and that her credit report remain clear of any judgment entered in favor of Lesmeister in DV-09-1431A.

---

[7]That hearing was continued when the Court determined the parties were not prepared to proceed.  Dkt. 299.

11

## DISCUSSION

### I.  Automatic Stay – 11 U.S.C. § 362(a).

The Debtor's filing of her Chapter 13 bankruptcy petition gave rise to an "automatic stay." 11 U.S.C. § 362(a).  Section 362(a)(1) stays "the commencement or continuation, . . . , of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case . . . ."

The Ninth Circuit has stated repeatedly the broad scope of the automatic stay as "one of the most important protections in bankruptcy law."  *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).  The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.  *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986).  The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

This Court stated at the hearing on May 10, 2012, that the filing of the First Amended Complaint in DV-09-1431A, and service on the Debtor, appear to be in clear violation of the automatic stay.  Tennant admitted knowing about the Debtor's bankruptcy filing.  Ex. RC2 shows that the Notice of the Debtor's chapter 13 case was sent to Tennant and Lesmeister. Tennant and Hamilton testified that they knew of the stay, and Tennant filed the First Amended

Complaint and had the Debtor personally served with knowledge and notice of the stay.  Binney admitted at the hearing on May 10, 2012, that Hamilton's advice that no relief from the stay was necessary, was not appropriate.

As to Hamilton's opinion that no stay relief is necessary, Ex. 5, he simply is wrong under longstanding case law in this District.  "[T]he creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court."  *In re Reece*, 15 Mont. B.R. 474, 477-78 (Bankr. D. Mont. 1996), citing *In re Lile*, 103 B.R. 830, 837, 841 (Bankr.S.D.Tex.1989); *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 920, 923 (Bankr. D. Mont. 1990).  *In re Cinematronics, Inc.,* 111 B.R. 892, 900 (Bankr. S.D. Cal. 1990), the court wrote:

> The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means.  *In re Gray*, 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989).  To disagree with Theodore Roosevelt, at least when the automatic stay is concerned, it is far better to be a "timid soul" who seeks a court determination of the limits of the stay, rather than to fail "while daring greatly".

Neither is stay relief a "formality" as Hamilton states in Ex. 5.  Montana Local Bankruptcy Rule ("Mont. LBR") 4001-1 sets forth detailed requirements, including use of a Local Bankruptcy Form 8, to file a motion to modify stay.  The motion must be accompanied by a fee set under 28 U.S.C. § 1930, although the parties may file a stipulation to modify the stay without a fee under Mont. LBR 4001-1(d).

It is true that relief from stay proceedings are handled in a summary fashion.  The Ninth Circuit Bankruptcy Appellate Panel explained:

> Relief from stay proceedings such as the one brought by Wells Fargo are primarily procedural; they determine whether there are sufficient countervailing equities to release an individual creditor from the collective stay.  One consequence of this broad inquiry is that a creditor's claim or security is not finally determined in the relief from stay proceeding. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738,

13

740-41 (9th Cir. 1985) ("Hearings on relief from stay are handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing."); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect . . . ."); *First Fed. Bank v. Robbins (In re Robbins)*, 310 B.R. 626, 631 (9th Cir. BAP 2004).

*Veal v. Amer. Home Mortg. Serving, Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. BAP 2011).

The foregoing explanation that relief from stay proceedings are handled in a summary fashion does not mean that they are a formality which is not necessary to undertake, as Hamilton recommended. On the contrary the summary handling of stay proceedings is an encouragement to follow the rules, not a reason to skip them as a formality. In this Court, motions to modify stay seeking relief limited to insurance coverage[8] routinely are granted, with the relief usually limited to the extent of insurance coverage, as Lesmeister requests, and the moving party often is required to return to court after obtaining a judgment to request further relief.

At present, the evidence admitted into the record appears to establish that Tennant willfully violated the stay when he filed the First Amended Complaint and had the Debtor served. Section 362(k) in effect in this case[9] provides:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

---

[8]The court in *In re Endoscopy Center of Southern Nevada, LLC*, 451 B.R. 527, 542-546 (Bankr. D. Nev. 2011) discusses the analysis to follow in determining whether proceeds of a typical liability insurance policy are property of the estate. *See also Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 783-800 (Bankr. D. La. 2001); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55-56 (5th Cir. 1993).

[9]Section 362(h) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA") which was enacted into law, after the commencement of this Chapter 13 case, on April 20, 2005. Section 362(h) became § 362(k).

14

*Eskanos & Adler v. Roman (In re Roman)*, 283 B.R. 1, 9 (9th Cir. BAP 2002).

The BAP in *Roman* twice cited Congress' intent that an award of attorney's fees and costs is mandatory upon a finding of a willful violation of the stay. *Id.*, 283 B.R. at 7, 9-10; *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876, 879 (9th Cir. BAP 1998). However, before reaching the merits the Court must decide Lesmeister's motion to strike the Debtor's Counterclaim.

**II. Motion to Strike.**

Lesmeister moved to strike Debtor's counterclaim for damages for willful violation of the stay. Debtor objected on the ground that the counterclaim is based on the same statute as Lesmeister's motion to modify stay, and based upon judicial economy because she will file a separate motion if the motion to strike is granted, and it will involve the same evidence, "or the court could just order it be docketed in that manner."

It is not this Court's job to draft parties' pleadings, or their docket entries. Rule 9013, F.R.B.P, provides in pertinent part: "A request for an order, except when an application is authorized by these rules, shall be by written motion ...." Rule 9014(a) further provides that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." *See, e.g., Panzer v. Wells Fargo Bank of Minnesota, N.A., et al. (In re Panzer)*, 220 Fed. Appx. 658 (9th Cir. 2007) (unpublished decision) (citing *In re Wade*, 115 B.R. 222 (9th Cir. BAP 1990). Debtor does not cite any rule which authorizes a counterclaim for violation of the automatic stay, and the Court is aware of none. The Court requires parties requesting affirmative relief to comply with Rules 9013 and 9014 and file a motion, unless another rule applies. Allowing the Debtor to depart from the motion requirement, as Debtor requests, would

15

undermine and invite departure from compliance with the rules by other practitioners.

At the hearing Binney cited *Wade* in support of Lesmeister's motion to strike.  In *Wade* the BAP affirmed a bankruptcy court's dismissal of a counterclaim seeking damages for willful violation of the stay on procedural grounds.  115 B.R. at 231.  The BAP wrote:

> The Bar's request for relief from the stay was a contested matter that was properly commenced by a motion. Bankruptcy Rules 4001(a) and 9014. The fact that the Bar alternatively contended that the stay did not apply did not change this into an adversary proceeding. Bankruptcy courts regularly hear motions for relief from the stay where a party contends in the alternative that the stay does not apply, but that if it does it should be lifted. The policies favoring expedited relief apply equally to such alternative motions as to motions which request only that the stay be lifted. Framing the request for relief in such a manner, therefore, should not convert the dispute into one that should be determined in an adversary proceeding. Given that the Bar's request for relief was properly brought as a motion, the debtors' counterclaim was procedurally inappropriate. Aside from the procedural irregularity of filing a counterclaim in response to a motion when there is no adversary proceeding pending, the assertion of counterclaims in relief from the stay litigation is improper.  *See, e.g.,* 8 *Collier on Bankruptcy* ¶ 4001.03 [2] at 4001–15 (15th ed. 1989). The bankruptcy court correctly dismissed the counterclaims on procedural grounds.

*Wade*, 115 B.R. at 230-31.

*Collier* continues to state that motion procedure precludes parties from asserting counterclaims in stay relief proceedings, and that if counterclaims are raised by parties they should be dismissed or severed from the stay relief proceeding, to be litigated at a later time.  9 *Collier on Bankruptcy* ¶ 4001.02[2] at 4001–10 (16th ed. 2010).

Debtor's counsel argues that this "could just order it be docketed in that manner."  The Court deems the better alternative is to grant the motion to strike and for Debtor to follow the applicable rules and file a motion as required by Rules 9013 and 9014, with service on Lesmeister.  That result would enforce the requirements of the rules for motion practice, and

would be consistent with BAP authority in this circuit.

Therefore, Lesmeister's motion to strike will be granted, but without prejudice to the Debtor's right to file a motion for damages for willful violation of the automatic stay. The Court will leave the record open and will entertain additional evidence offered by the parties if there is any, but given the clear evidence of a willful violation of the stay shown by the record to date it may be mandatory to award damages. *See Roman*, 283 B.R. at 9-10; *Walsh*, 219 B.R. at 876, 879.

If the parties are unable to resolve this matter and Debtor files a motion for sanctions under § 362(k), the Court will proceed under the guidance provided in *Roman*. There, the BAP observed that fee shifting statutes like § 362(h) give debtors an opportunity to use the statute as a sword rather than a shield against creditors, to courts' dismay, and that rewarding debtors too lavishly in § 362(h) actions "will encourage a cottage industry of precipitous § 362(h) litigation". *Roman*, 283 B.R. at 11, quoting *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989). This Court is not aware of a cottage industry of precipitous § 362(h) litigation in this District, and no evidence of one was offered at the May 10, 2012, hearing.

Under *Roman* the Court must examine whether the Debtor could have mitigated her damages, and in determining the appropriate amount of attorney's fees to award courts look to two factors: (1) What expenses or costs resulted from the violation; and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated. *Roman*, 283 B.R. at 12, quoting *In re GeneSys, Inc.,* 273 B.R. 290, 296 (Bankr. D.C. 2001) (other citations omitted). "Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive

17

damages." *Roman*, 283 B.R. at 12 (citing cases).  The instant case will require special scrutiny because Debtor's only proven damages were mileage for herself and attorney, her attorney's fees and costs, including video costs for a stay violation hearing for which the Court concluded the parties were not prepared to proceed.  The parties should further consider whether the limitations imposed on attorney's fees by *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2009), apply.

### III.  Lesmeister's Motion to Modify Stay.

Lesmeister moves to modify the stay to proceed with his personal injury claim against the Debtor, only to the extent of her insurance policy limits.  Debtor objects that the motion should be denied because Lesmeister did not file a Proof of Claim and therefore lacks standing.

Section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" *Veal*, 450 B.R. at 897.  This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances.  The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".  What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166.  *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*See also In re Kronemyer v. American Contractors Indemnity Co. (In re Kronemyer)*, 405 B.R. 915, (9th Cir. BAP 2009); *Edwards v. Wells Fargo Bank, N.A.*, 454 B.R. 100, 106 (9th Cir. BAP 2011).

Section 362 vests this Court with broad discretion in granting relief from the stay for cause under § 362(d).  *Edwards*, 454 B.R. at 107; *Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (9th Cir. 2010; *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).  As the party seeking relief, Lesmeister must first establish that cause exists for relief under § 362(d)(1).  *United States of America v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. BAP 2009), citing *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 206 B.R. 196, 200 (9th Cir. BAP 1996).  Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is not warranted.  *Id.*

The BAP in *Kronemyer* listed some factors appropriate to consider in determining whether relief from the stay should be granted to allow state court proceedings to continue, including considerations of judicial economy and the expertise of the state court, as well as prejudice to the parties and whether exclusively bankruptcy issues are involved.  405 B.R. at 921 (citing cases).  As to those factors, the expertise of the state court in deciding a personal injury negligence claim under Montana law favors granting relief from the stay, as does the fact that DV-09-1431A involves exclusively non-bankruptcy claims and issues of negligence.  As a matter of law, Lesmeister's personal injury tort claims are not core proceedings under 28 U.S.C. § 157(b)(2)(O).

The Debtor testified that participating in DV-09-1431A would distract from her efforts at reorganization, but the Court nevertheless concludes that granting relief from the stay to allow Lesmeister's negligence claim against her to proceed would not prejudice her unfairly.  Wyatt-

19

Shaw testified that Debtor's insurance carrier is paying all of her fees and costs in DV-09-1431A, and Lesmeister's motion seeks relief from the stay to proceed against her only to the extent of the insurance coverage.

The bankruptcy court in Nevada discussed whether insurance policy proceeds are property of the estate. *In re Endoscopy Center of Southern Nevada, LLC*, 451 B.R. 527 (Bankr. D. Nev. 2011). The court surveyed case law, and noted that with respect to third-party liability claims-made policies, case authority suggests that insurance policy proceeds are not property of the estate, or at least that any interest the estate has is *de minimis*. *Id.* at 543, 544-46 (discussing *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993), and *Landry v. Exxon Pipeline Co.*, 260 B.R. 769 (Bankr. D. La. 2001)). The Chapter 13 Trustee filed a consent to Lesmeister's motion, which suggests that the estate's interest in the insurance policy proceeds was not of enough significance to object. If relief from the stay is not granted, the Court finds that Lesmeister will be prejudiced by denying him the chance to recover from the proceeds of the Debtor's insurance policy for his injuries.

Granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay. *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993). Thus, while the Court has flexibility in determining whether to grant Lesmeister's motion to modify the stay, by granting the motion the Debtor retains whatever claims, defenses and remedies she may have in DV-09-1431A. She may but will not be required to expend any resources. By the terms of Lesmeister's motion, the Debtor cannot be subject to liability beyond the insurance policy limits.

Debtor's argument that entry of a judgment against her will adversely affect her credit rating is not persuasive.  Although no evidence of her credit rating exists in the record, the Court presumes that the Debtor's filing of her voluntary chapter 13 petition already adversely affected her credit.  That effect will diminish over time, but the Court sees little if any additional adverse affect in the event a judgment is entered against the Debtor in DV-09-1431A for the insurance policy limits.  If anything, the recording of a satisfaction of judgment when the insurance company pays under the policy may have a positive effect on Debtor's credit.

Having considered the *Kronemyer* factors, the Court concludes that Lesmeister has satisfied his initial burden to establish that cause exists for relief under § 362(d)(1).  *Gould*, 401 B.R. at 426, citing *Duvar*, 206 B.R. at 200.  The burden shifts to the Debtor to show that relief from the stay is not warranted.  *Id.*

The Debtor contends that Lesmeister is not a party in interest under the law of the case because he did not file a Proof of Claim by the deadline set in the Chapter 13 case, and is therefore a stranger to the case and lacks standing to file his motion to modify stay or participate in any fashion, citing the Second Circuit's decision in *Comcoach*.  The Ninth Circuit BAP cited *Comcoach* in *Kronemyer* as "taking the narrow view that *only* creditors have standing to bring a motion for relief from the stay[.]"  405 B.R. at 921.  By contrast, in the Ninth Circuit precedent is "appropriately lenient with respect to standing for stay relief."  *Veal*, 450 B.R. at 913-14, citing *Kronemyer*, 405 B.R. at 921 ("[c]reditors may obtain relief from the stay if their interests would be harmed by continuance of the stay"), and 3 *Collier on Bankruptcy* ¶ 362.07[2] (Alan Resnick and Henry Sommer, eds., 16th ed. 2011) ("Any party affected by the stay should be entitled to seek relief").

21

Section 362(d) allows a "party in interest" to file a motion for relief from the stay.  The BAP wrote:

> While the Code does not define the term "party in interest," this status is "determined on a case-by-case basis, with reference to the interest asserted and how [that] interest is affected by the automatic stay." *In re Kronemyer*, 405 B.R. at 919 (quoting *In re Woodberry*, 383 B.R. 373, 378 (Bankr. D. S.C. 2008).
>
> This panel has previously held that "a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *In re Veal*, 450 B.R. at 914-15 [other citations omitted].

*Edwards*, 454 B.R. at 105.

Lesmeister's interest asserted is as a tort victim arising from a car accident, and his interest in litigating his claim in DV-09-1431A is subject to the automatic stay.  The evidence in the record, including Robin's testimony and Ex. 2, RC3 and RC4, establish that the accident took place involving the parties.  Based on that evidence the Court concludes that Lesmeister has established that he has a colorable claim against the Debtor, and based upon her alleged liability he has a claim to enforce his rights against her insurance policy proceeds.  *Edwards*, 454 B.R. at 105; *Veal*, 450 B.R. at 914-15.

Debtor relies on *Comcoach* in contending that Lesmeister is not a creditor because he did not file a Proof of Claim by the bar date set in the Chapter 13 case.  In *Comcoach* the bank, which had filed a motion to modify the stay, was found not to be a creditor with a claim against the bankrupt under § 101 because the debtor had no obligation under the bank's mortgage, and the debtor's obligation to pay rent on a lease ran to the landlord, not the bank.  698 F.2d at 573.  The Second Circuit concluded that the bank had no claim against the debtor or estate, was not a creditor and could not move to modify the stay.  *Id.*  The facts in the instant case are distinguishable.

The Debtor listed Lesmeister as a creditor in her Schedule F, albeit a creditor with a

22

contingent, disputed and unliquidated claim.  The Court notes that the Debtor filed amended

Schedules after she converted this case to Chapter 11, but did not file an amended Schedule F.

The Bankruptcy Code defines "creditor" as "an entity that has a claim against the debtor

that arose at the time of or before the order for relief concerning the debtor." *Kronemyer*, 405 B.R.

at 919, quoting 11 U.S.C. § 101(10)(A).  "Claim" is defined as a "right to payment, whether or not

such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured ...." § 101(5)(A); *Kronemyer*, 405

B.R. at 919.  Based on the uncontroverted testimony that the accident occurred involving the

parties, and the exhibits admitted into evidence, Lesmeister is without question a creditor with a

claim, and his interests in liquidating his claim would be harmed by continuance of the stay of his

claim against the Debtor in DV- 09-1431A.

Debtor argues that Lesmeister lacks standing because he did not file a Proof of Claim by

the claims bar date while the case was pending in Chapter 13.  Debtor likens Lesmeister to Nigel

Cini, who the Court concluded lacked standing to participate in the case after his claim was

disallowed.  Nigel's status is distinguishable from Lesmeister.  Nigel filed a Proof of Claim in the

Chapter 13 case after the claims bar date.  The Chapter 13 Trustee filed a notice of late filed claim,

and after notice and a hearing this Court disallowed Nigel's claim for filing after the claims bar

deadline.  In addition, however, the Court concluded that Nigel lacked standing because his claims

were based on his state court marital dissolution case with the Debtor, which has become final and

has preclusive effect.  Lesmeister's claim in DV-09-1431A against the Debtor has not gone to trial

because of the automatic stay, and is not final.

Debtor's argument based on Lesmeister's failure to file a Proof of Claim in the chapter 13

case lacks merit, in this Court's view, because the chapter 13 bar date is no longer in effect.  This

23

Court concluded that the Debtor was not eligible for chapter 13 relief, and the Court had granted Genesis' motion to dismiss the chapter 13 case.  If the dismissal had taken place the chapter 13 bar date would be without effect.

The Debtor chose to convert the case to chapter 11, which the Court granted.  Having chosen to proceed under chapter 11 the Debtor must live with her choice.  The Notice of commencement of the chapter 11 case was sent out to creditors informing them that no claims bar date has been set, and that if a claims bar date is set they will be permitted to file a Proof of Claim.  The Debtor never objected to the provision in the Notice that no claims bar date has been set, and never requested relief from the provisions of the Notice.   Debtor did not amend her Schedule F, so Lesmeister remains a creditor with a scheduled claim.  Therefore, the deadline set in the chapter 13 case is moot and not grounds to conclude Lesmeister lacks standing as a party in interest.

## CONCLUSIONS OF LAW

1.  This Court has original and exclusive jurisdiction of this chapter 11 bankruptcy case under 28 U.S.C. § 1334(a).

2.  Lesmeister's motion to modify stay and motion to strike counterclaim are core proceedings under 28 U.S.C. § 157(b)(2).

3.  Debtor's Counterclaim for damages for willful violation of the stay is improper procedure; therefore Lesmeister's motion to strike the Counterclaim will be granted.

4.  Lesmeister satisfied his burden to show that he is a party in interest with standing and that relief from the stay should be granted for cause so that he can proceed with his state court litigation in DV-09-1431A against the Debtor, only to the extent of the policy limits of her liability insurance policy.

24

5.  Debtor failed to satisfy her burden of proof under § 362(d) that relief from the stay should not be granted.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above:  (1) granting Lesmeister's motion to strike; and (2) granting Lesmeister's motion to modify stay and authorize him to proceed with DV-09-1431A in the Montana Eleventh Judicial District Court, Flathead County, only to the extent of the limits of the Debtor's liability insurance policy.

BY THE COURT

*Ralph B Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

25