UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ROBIN JEAN LYON CINI**,<br><br>Debtor. | Case No. **10-62715-11** |

# MEMORANDUM OF DECISION

At Butte in said District this 8th day of February, 2013.

In this Chapter 11 case the Debtor Robin Jean Lyon Cini ("Robin") filed on October 29, 2012, a Motion (Docket No. 378) for Sanctions against her former spouse Nigel Cini ("Nigel") for Violations of the Automatic Stay under 11 U.S.C. § 362(k) ("Motion") by filing two (2) lawsuits against Robin on April 18, 2012, in the Flathead County Montana District Court. Nigel filed a response in opposition calling Robin's Motion frivolous and asking that she be held in contempt. A hearing on Robin's Motion was held at Missoula on December 6, 2012. Robin appeared and testified, represented by attorney James H. Cossitt ("Cossitt") of James H. Cossitt, PC, of Kalispell, Montana. Nigel Cini ("Nigel") appeared pro se and testified. Robin's Exhibits ("Ex.") 1, 2, 3, 4, and 5 were admitted into evidence without objection. At the request of Debtor's counsel the Court took judicial notice of Docket Nos. 113, 116, 128, 160, 378, 387 and 389 to show that Nigel knew about the automatic stay. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record and applicable law, this matter is ready for decision. Based on Nigel's admission that he filed the lawsuits, for the reasons set forth below Debtor's Motion for Sanctions against Nigel will be granted by separate

Order.

This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). Debtor's Motion for Sanctions for violation of the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

**FACTS & PROCEDURAL HISTORY**

Robin Cini and Nigel were married and lived in Kalispell, Montana. Robin was involved in a motor vehicle accident on April 16, 2009, as a result of which their daughter died. Robin and Nigel divorced and their marital property was divided by the Montana state district court. Nigel appealed the division of marital property to the Montana Supreme Court. The district court's division of marital property was affirmed and became final[1] and establishes claim preclusion with respect to the division of marital property.

Robin testified that Nigel has filed numerous lawsuits against her based on their marital dissolution and the accident. She testified that there currently are nine (9) lawsuits pending, and 12 others have been closed. Nigel has filed appeals of adverse decisions in the Montana Supreme Court, the United States District Court for the District of Montana, the Ninth Circuit Court of Appeals, and the United States Supreme Court. Robin testified that Nigel files all these lawsuits in anger towards her and is trying to ruin her financially. She estimates that she has spent between $60,000 to $65,000 in legal fees and counseling because of Nigel's litigiousness.

Robin filed a voluntary Chapter 13 petition on November 19, 2010. The notice of

---

[1] Nigel testified that he appealed the Montana Supreme Court's decision to the United States Supreme Court.

commencement of this case, deadlines, and actions of creditors prohibited by 11 U.S.C. § 362, was entered on November 19, 2010, and was mailed to parties on November 21, 2010. The BNC certificate of mailing (Dkt. 15) states that the Notice was mailed to Nigel at 185 Badrock, Columbia Falls, Montana. Nigel testified that he knew of Robin's bankruptcy and the automatic stay.

Nigel filed a proof of claim in this case, and his claim was disallowed. He filed motions to modify stay (Dkt. 113 & 128), and he testified that his motion was granted and he was allowed to proceed with his appeals in the marital dissolution case. Dkt. 160.

On December 28, 2011, Robin filed a motion to convert the case to Chapter 11. Nigel filed an objection on January 12, 2012, contending that Robin was not eligible for Chapter 11. After a hearing which Nigel attended on February 9, 2011, the Court granted Robin's motion and converted the case to Chapter 11. Also on February 9, 2011, the Court enjoined Nigel from filing any further papers in this case unless he first requested and was granted leave from the Court, because Nigel lacked standing after the final decision of the Montana state court on the division of marital property.

Robin testified that on March 28, 2012, she received in her mailbox a letter from Nigel, Ex. 5 dated March 22, 2012. In Ex. 5 Nigel blamed Robin for their daughter's death. He demanded that she return all properties, assets and control of properties to him and dismiss her bankruptcy, or he would file a wrongful death lawsuit against her and the state court judge in their divorce. Robin interpreted Ex. 5 as blackmail, and she testified that she sent a short response rejecting Nigel's demands.

Robin testified that she learned informally that Nigel had filed complaints against her in

state court. She has not been served with the complaints. She testified that she told her attorney to investigate, and they learned that Nigel had filed 2 complaints. Ex. 2 is a complaint filed in the Eleventh Judicial District Court of Flathead County, Montana, Cause No. DV-12-426A naming Robin as a defendant, on April 16, 2012. That complaint states two causes of action against Robin alleging wrongful death and malicious acts and omissions which violated Nigel's rights and caused damages. Ex. 1 is the case register for DV-12-426A.

Ex. 4 is the complaint filed on April 18, 2012, in the Montana Eleventh Judicial District Court, Flathead County, naming Robin and Judge Ted Lympus as defendants in Cause No. DV-12-430(D). It states causes of action against the defendants for defamation, slander, conspiracy, breaches of contracts, frauds upon the court, alienation of affection between Nigel and his surviving child and violations of Nigel's rights under state and federal law.

Robin testified that she wanted to move forward with confirmation of her Plan, so she weighed her options and waited to file the instant Motion for Sanctions. She testified that the filing of the two lawsuits by Nigel caused her emotional and financial harm because he filed a wrongful death suit against her on the anniversary of the death of their child. She testified that she had to seek counseling as a result of Nigel's filing of the two complaints on April 16, 2012, and she is taking medication and had to pay her attorney to investigate Nigel's lawsuits. She testified that she has incurred fees and expenses in the amount of $2,700 plus the cost of video conference rental, plus another 5 hours of Cossitt's time[2] to prepare for and attend the hearing.

Nigel testified that he filed the two lawsuits in Flathead County district court because a

---

[2] Cossitt's billing rate as Debtor's attorney, as set forth in his applications for compensation, e.g. Dkt. 426 at page 3, is $300 per hour.

4

three year statute of limitations on his claims was about to expire. He testified that he does not intend to pursue the lawsuits against Robin, but he was told by "retired judges" to preserve his rights to due process. Under examination by the Court Nigel admitted that he knew that Robin was in bankruptcy when he filed the two lawsuits in April of 2012, and that he did not think that he needed to request relief from the automatic stay because his claims against Robin are nondischargeable under 11 U.S.C. § 523(a)(6)[3], which excepts from discharge any debt for willful and malicious injury by the debtor to another entity. Nigel testified that he researched the automatic stay and he found the exception from discharge of § 523(a)(6).

On October 29, 2012, Robin filed her Motion for Sanctions against Nigel under 11 U.S.C. § 362(k) alleging that Nigel filed the two lawsuits in Case # DV-12-426 in the Flathead County Montana District Court, and # DV-12-430 in the Flathead County Montana District Court in willful violation of the automatic stay. Nigel filed a response on November 7, 2012.

In his response Nigel admits that he filed the two lawsuits to preserve his rights against a time bar, but he contends that the issues in the lawsuits are not dischargeable under § 523(a)(6) in Robin's bankruptcy and so the automatic stay does not apply, and he argues that her Motion for Sanctions is frivolous and she should be held in contempt for filing a frivolous motion.

## DISCUSSION

The Debtor's filing of her bankruptcy petition on November 19, 2010, gave rise to an "automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309

F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).  The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.  *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986).  The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).
>
> Section 362(k)[4] in effect in this case provides:
>
> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

*Leetien, P.C., v. Roman (In re Roman)*, 283 B.R. 1, 9 (9th Cir. BAP 2002).

An award of attorney's fees and costs is mandatory as actual damages upon finding a willful violation of the stay under § 362(k).  *Roman*, 283 B.R. at 9-10.  The BAP in *Roman* cited Congress' intent that an award of attorney's fees and costs is mandatory upon a finding of a willful violation of the stay.  *Id.*, 283 B.R. at 7, 9-10; *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876, 879 (9th Cir. BAP 1998); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995).

The BAP in *Roman* reiterated the long-standing rule followed by this and other courts that a violation of the stay is willful if (1) the creditor knew of the stay, and (2) the creditor's actions which violated the stay were intentional.  283 B.R. at 8; *Leetien & Adler*, 309 F.3d at 1215; *In re*

---

[4]Section 362(h) was amended and redesignated to § 362(k) by enactment of BAPCPA in 2005.

*Reece*, 15 Mont. B.R. 474, 477-78 (Bankr. D. Mont. 1996), citing *In re Lile*, 103 B.R. 830, 836, 841 (Bankr.S.D.Tex.1989). In *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003), the Ninth Circuit noted that § 362(k) provides for damages for willful violation of the stay upon a finding that the defendant knew of the automatic stay and that the defendant's actions, which violated the stay, were willful. *See also Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995) (cited in *Roman*, 283 B.R. at 12-13).

A party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay. *Dyer*, 322 F.3d at 1191, *citing Pinckstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992). Further, "once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362([k])." *Risner*, 317 B.R. at 835, citing *Leetien & Adler*, 309 F.3d at 1215; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 923 (Bankr. D. Mont. 1990).

This Court is aware of its duty to construe pro se pleadings liberally, including pro se motions as well as complaints. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003). The evidence is uncontroverted that Nigel was served with the notice of commencement of Robin's bankruptcy case, and he admits knowing of the case and the automatic stay. Nigel filed a proof of claim, objections, responses, and filed a prior motion to modify stay which was granted to permit him to pursue his appeal in the marital dissolution. Thus Nigel knew of the automatic stay and his actions in filing the two state court lawsuits in April 2012 were intentional. Nigel's acts constitute willful violations of the stay. *See Roman*, 283 B.R. at 8; *Leetien & Adler*, 309 F.3d at 1215.

It does not matter that Nigel believes his actions were justified, either to preserve his rights

against the running of a statute of limitations, or because he believed the stay did not apply because his new state law claims against Robin are nondischargeable under § 523(a)(6). He did not file a motion to modify stay before filing his two complaints in state court. "The creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court." *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923, quoting *In re Lile*, 103 B.R. at 837. A party's violation of the stay may be willful even if a creditor believed itself justified in taking an action found to be violative of the automatic stay. *In re Cinematronics, Inc.,* 111 B.R. 892, 900 (Bankr. S.D. Cal. 1990), the court wrote:

> The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means. *In re Gray*, 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989). To disagree with Theodore Roosevelt, at least when the automatic stay is concerned, it is far better to be a "timid soul" who seeks a court determination of the limits of the stay, rather than to fail "while daring greatly".

Actions taken in violation of the automatic stay are void, not merely voidable. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (9th Cir. BAP 2005); *Gruntz*, 292 F.3d at 1082; *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States* ("*Schwartz*"), 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d at 586. The postpetition collection actions initiated by the creditor in *Leetien* were in plain violation of the stay and void, and subject to sanctions. The bankruptcy court imposed sanctions for willful violations of the stay, and the district court and Ninth Circuit affirmed. *Leetien,* 309 F.3d at 1212. Concluding, the Ninth Circuit wrote:

> We conclude that § 362(a) imposes an affirmative duty to discontinue post-petition collections actions. Sanctions are appropriate pursuant to § 362(h) because Eskanos willfully violated the automatic stay by maintaining the active collection action and unjustifiably delaying its dismissal after receiving notice of

the bankruptcy petition.

*Leetien*, 309 F.3d at 1216.

In construing *Leetien*, a district court notes that the Ninth Circuit in that case, "defines discontinuation as either a dismissal *or* stay of proceedings. *Johnston v. Parker (In re Johnston)*, 321 B.R. 262, 286 (D. Ariz. 2005) (emphasis in original), quoting *Leetien*, 309 F.3d at 1214 ("A party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to § 362([k])").

Based on the record, this Court finds and concludes that Robin has satisfied her burden of proof to show that Nigel has not stayed his two state court actions against her. Nigel initiated his two state court actions against Robin after the petition was filed like the creditor in *Leetien,* which this Court finds willfully violated the stay. Ex. 1 and 3 show Nigel's activity post-petition in both state court proceedings.

The Ninth Circuit quoted above noted that the creditor willfully violated the stay by maintaining an active collection action "and unjustifiably delaying its dismissal" after receiving notice of the stay. *Leetien*, 309 F.3d at 1216. Nigel filed the two complaints against Robin in state court in violation of the stay, and he failed to dismiss them even after Robin filed her Motion for Sanctions. The Court finds that in such circumstances Nigel's failure to dismiss the state court actions is not justifiable or reasonable under *Leetien*, 309 F.3d at 1216.

Lastly, the Court notes that the BAP has observed that "fee shifting statutes, like § 362([k]) have given debtors an opportunity to use the statute as a sword rather than a shield against creditors, to courts' dismay[,]" and "that rewarding debtors too lavishly in § 362([k])

actions will encourage a cottage industry of precipitous § 362([k]) litigation[.]" *Roman*, 283 B.R. at 11, quoting *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989).

Under *Roman* the Court must examine whether the Debtor could have mitigated her damages, and in determining the appropriate amount of attorney's fees to award courts look "to two factors: (1) What expenses or costs resulted from the violation; and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *Roman*, 283 B.R. at 12, quoting *In re GeneSys, Inc.,* 273 B.R. 290, 296 (Bankr. D.C. 2001) (other citations omitted). "Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages." *Roman*, 283 B.R. at 12 (citing cases). The instant case requires special scrutiny because Debtor's only damages shown by the evidence were video conference expenses and her attorney fees, and the Court finds that there is insufficient evidence in the record to support an award of punitive damages. Robin testified only generally regarding her emotional distress when she learned of the filing of Nigel's two lawsuits.

Robin's only evidence of actual damages was her testimony that she incurred $2,700 in fees for her attorney to investigate, and incurred another five hours of fees to prepare for and attend the hearing on her Motion for Sanctions, and costs for renting videoconferencing time. Cossitt's billing rate is $300 per hour. Therefore the Court finds that Nigel's willful violations of the stay caused Robin damages in the form of attorney fees in the total amount of $4,200, which the Court will award pursuant to § 362(k) for Nigel's willful violations of the stay. The Court awards nothing for the videoconference costs because no testimony to support an award of such

10

cost in any amount exists in the record.  The Court awards nothing for emotional damages.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a).

2.  Debtor's Motion for Sanctions is a core proceeding under 28 U.S.C. § 157(b)(2).

3.  Debtor satisfied her burden of proof to show by a preponderance of the evidence that Nigel Cini willfully violated the automatic stay by filing two complaints against her in Flathead County Montana District Court while knowing of the automatic stay.

5.  Debtor's only injuries are attorneys' fees in the total amount of $4,200 incurred in investigating and litigating the Motion.  Insufficient evidence exists warranting an award of costs, and insufficient evidence exists warranting punitive damages.  *Roman*, 283 B.R. at 12.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above granting the Debtor's Motion for Sanctions against Nigel Cini and awarding Robin Cini a total of $4,200.00 in attorney fees against Nigel Cini as damages for his willful violations of the automatic stay under 11 U.S.C. § 362(k).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana